Filed 1/31/25  P. v. Welch CA3
Opinion following transfer from Supreme Court

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

----

| | |
|---|---|
| THE PEOPLE, | C095476 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF1700159) |
| v. | |
| CAMERON MICHAEL WELCH, | OPINION ON TRANSFER |
| Defendant and Appellant. | |

A jury found defendant Cameron Michael Welch guilty of committing corporal injury on his spouse, possessing a firearm as a felon, possessing ammunition as a felon, and failing to appear.  The trial court then imposed a sentence that included the upper term on the corporal injury count.  On appeal, Welch claims:  (1) the court erred when it permitted the victim to testify about prior incidents of domestic violence between her and Welch; (2) his upper term sentence should be reversed and remanded in light of Senate Bill No. 567 (2021-2022 Reg. Sess.) (Senate Bill No. 567); and (3) he received

1

ineffective assistance of counsel because defense counsel failed to object to several fines and fees under *People v. Dueñas* (2019) 30 Cal.App.5th 1157.

In an opinion filed on April 12, 2023, we concluded Welch had not demonstrated prejudicial error requiring reversal and, accordingly, we affirmed the judgment. The California Supreme Court granted review and ordered this court to vacate its prior decision and reconsider the cause in light of *People v. Lynch* (2024) 16 Cal.5th 730 (*Lynch*) and *Erlinger v. United States* (2024) 602 U.S. 821. Having done so, we now conclude that remand for a resentencing hearing is required. We otherwise affirm the judgment.

## BACKGROUND

Welch was charged with corporal injury on a spouse (Pen. Code, § 273.5, subd. (a); count 1),[1] possession of a firearm as a convicted felon (§ 29800, subd. (a)(1); count 2), possession of ammunition as a convicted felon (§ 30305, subd. (a)(1); count 3), and failure to appear while out on bail (§§ 1320.5, 12022.1; count 4). The prosecution also alleged Welch had a prior strike conviction based on a 2009 conviction for corporal injury on a dating partner (§ 273.5) with a great bodily injury enhancement (§ 12022.7, subd. (e)). Welch admitted the prior strike and bail enhancements before trial.

At trial, the victim testified Welch had a history of domestic violence before and after they were married. The victim had a history of abusing alcohol and self-harm. On the evening of the charged offense, the victim was upset and wanted to get a drink. Welch and the victim went for a drive and drank vodka. They returned home eventually, and the victim remembered entering through the garage, but did not recall anything after that.

---

[1] Undesignated statutory references are to the Penal Code.

Before the two had left the house, the house was clean and tidy, and the doors were intact. The victim was also uninjured. When the victim woke up in the morning, the house was in disarray. Welch was asleep. There was a shotgun that the victim had never seen before in the house. The victim had a "flash of memory" from the night before: she was sitting on the bed and Welch was pressing a handgun against her skin. The victim looked in a mirror and saw dried blood on her face and several injuries she did not have before. In particular, she had abrasions or lacerations on her neck, bruising behind her right ear, dried blood and an abrasion above her eye, and a bruise and laceration on her thigh. She also had bruises on her torso and hands.

The victim called a friend and said she and Welch had been fighting all night, that he had weapons in the house, "had been physical with her," and that she was hiding in a closet. The victim also sent pictures of her injuries and firearms in the house. The friend and her boyfriend called law enforcement.

A sheriff's deputy arrived at the house, but no one answered the door. Dispatch routed a call from Welch to the deputy, and Welch asked what was wrong with the victim. The deputy asked him why he would think something was wrong with the victim, but Welch did not respond. The victim eventually let the deputy into the house. She appeared to have fresh injuries and the house was in "complete disarray," with a broken door near the fireplace. The deputy found a variety of ammunition around the home, but could not find the shotgun the victim showed him in a photo she had taken earlier that morning. The victim told the deputy she did not have a specific memory about how she had been injured, but said Welch had inflicted them. The jury found Welch guilty of all charges.

At the sentencing hearing, defense counsel challenged several items in the probation report, including misstatements about which prior conviction constituted a prior strike. Defense counsel also objected to the amount of victim restitution. Welch asked to speak, and then engaged the court in a lengthy exchange in which he

3

acknowledged he had been convicted of two felonies before the current offense, admitted he was on parole at the time of the offense, and said he made a "huge mistake" in marrying the victim because she had "mental health issues." The court eventually ordered Welch removed from the courtroom.

The court imposed an aggregate term of 14 years: eight years (the upper term, doubled) for count 1, 16 months each for counts 2 through 4, and two years for the bail enhancement. The court explained it selected the upper term based on Welch's two prior felony convictions, prior prison terms, and because he was on parole at the time of the current offense. The court imposed a $3,600 restitution fine (§ 1202.4) with a matching parole revocation fine (§ 1202.45), suspended pending parole revocation, and said Welch "has a limited ability to earn wages while in the Department of Corrections." The court also imposed a $160 court security assessment (§ 1465.8) and a $120 criminal conviction assessment (Gov. Code, § 70373).

## DISCUSSION

## I

### *Prior Acts of Domestic Violence*

Welch argues the trial court erred when it admitted evidence of his prior acts of domestic violence toward the victim and a previous girlfriend. In particular, Welch objects to the number of incidents introduced and argues they were unduly prejudicial under Evidence Code section 352 because they were uncorroborated by other evidence, distracted the jury, and were cumulative. We disagree.

A.    *Background*

Before trial, the prosecution filed a motion in limine seeking the admission of Welch's prior acts of violence under Evidence Code section 1109. In particular, the prosecution highlighted an incident in October 2016 where Welch grabbed the victim by the throat and pinned her against a wall. The prosecution also identified incidents the victim testified to at the preliminary hearing, including an incident where Welch had tied

the victim up and threatened to kill her. The motion also highlighted an incident from 2009 with a previous girlfriend in which Welch struck the girlfriend in the face and strangled her until she lost consciousness.

The court found the 2016 incident admissible under Evidence Code section 1109 and *People v. Zack* (1986) 184 Cal.App.3d 409, in that it showed the "up and downs and all the violence that is involved in this particular relationship." The court ruled similarly as to the other incident with the victim, saying it was included as part of "the totality of the relationship, the entire relationship between defendant and his spouse." The court also determined the prosecution could use certified documents proving the conviction for the incident with Welch's prior girlfriend, but that the specific facts would be inadmissible unless the prior girlfriend testified.

At trial, the victim testified that Welch had been physically violent with her approximately 10 to 15 times before they married in 2016. She said there was "nothing . . . off limits," including "strangulation, slamming my head up against windowsills," and hurting her arms and legs. She was frequently injured and would use makeup or clothes to hide the injuries. After they were married, she estimated he had been violent with her at least six times.

In particular, she recounted an incident in which Welch held her against a wall by her neck. She also remembered an incident where Welch choked her to prevent her from calling police. She briefly mentioned an incident in which Welch shoved her in the shower when she was getting ready for work and punched her in the legs because she was talking to someone at work. In one instance, Welch broke furniture. He tied her up and told her he was going to chop her up and throw her in the river. The victim told a friend about some of the abuse, but did not disclose the severity to anyone, and did not report Welch to law enforcement.

During a break in the proceedings, defense counsel moved for a mistrial based on the victim's testimony, saying the specific number of incidents the victim testified to was

5

beyond the scope of the court's ruling on the motion in limine. The court denied the motion, citing to Evidence Code section 1109 and *People v. Zack*, *supra*, 184 Cal.App.3d 409.

Deputy Phillip Bronson testified that when he spoke with the victim on the day of the incident, she told him about prior incidents of domestic violence between her and Welch, including an incident where he grabbed her throat and pinned her against a wall. Welch also told her he was going to "chop her up into little pieces."

B.    *Analysis*

Evidence of prior criminal acts is ordinarily inadmissible to show a defendant's propensity to commit such acts. (Evid. Code, § 1101.) There is an exception, however, in cases involving domestic violence. (Evid. Code, § 1109.) Evidence Code section 1109, in effect, " 'permits the admission of defendant's other acts of domestic violence for the purpose of showing a propensity to commit such crimes.' " (*People v. Brown* (2011) 192 Cal.App.4th 1222, 1233.) The admission of prior acts as propensity evidence encompasses both charged and uncharged acts. (*Ibid.*)

"Even if the evidence is admissible under [Evidence Code] section 1109, the trial court must still determine, pursuant to [Evidence Code] section 352, whether the probative value of the evidence is substantially outweighed by the probability the evidence will consume an undue amount of time or create a substantial danger of undue prejudice, confusion of issues, or misleading the jury." (*People v. Brown, supra*, 192 Cal.App.4th at p. 1233.) The law requires " ' "the probative value of the evidence must be balanced against four factors: (1) the inflammatory nature of the uncharged conduct; (2) the possibility of confusion of issues; (3) remoteness in time of the uncharged offenses; and (4) the amount of time involved in introducing and refuting the evidence of uncharged offenses." ' " (*People v. Thomas* (2021) 63 Cal.App.5th 612, 630, quoting *People v. Culbert* (2013) 218 Cal.App.4th 184, 192.) " 'The principal factor

6

affecting the probative value of an uncharged act is its similarity to the charged offense.' " (*People v. Hollie* (2010) 180 Cal.App.4th 1262, 1274.)

The court enjoys broad discretion in making this determination, and the court's exercise of discretion will not be disturbed on appeal except upon a showing that it was exercised in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice. (*People v. Mora and Rangel* (2018) 5 Cal.5th 442, 480.) To determine whether the trial court abused its discretion, we must focus on what the court was made aware of at the time it ruled on the motion; a party cannot argue on appeal that the trial court erred in failing to conduct an analysis it was not asked to conduct. (*People v. Fruits* (2016) 247 Cal.App.4th 188, 208.)

Here, Welch's acts of prior domestic violence were probative because they occurred not long before the current offense and tended to show his actions were willful and intentional. For example, Welch had a history of restraining the victim by the throat or strangling the victim, which suggested the marks on the victim's neck were not accidental or self-inflicted. At trial, Welch explicitly argued the victim's injuries may have been caused as a result of the victim's own actions or as self-harm, and his history of domestic violence effectively rebutted that claim.

Moreover, the prior acts of domestic violence were not significantly more inflammatory than the charged offense. Many of the previous incidents were not summarized in detail, aside from general statements about Welch's conduct, and the incidents that were explained involved injuries that were less severe. (See *People v. Jennings* (2000) 81 Cal.App.4th 1301, 1314.) The evidence did not consume a large amount of time and was straightforward, avoiding any risk of confusing the issues for the jury. For the same reasons, we do not agree that the evidence was unduly cumulative.

Welch contends the evidence was not sufficiently corroborated by third-party testimony or other evidence. Evidence Code section 1109, subdivision (d)(3) states, in pertinent part: "Subject to a hearing conducted pursuant to [Evidence Code] Section 352,

7

which shall include consideration of any corroboration and remoteness in time, 'domestic violence' has the further meaning as set forth in Section 6211 of the Family Code, if the act occurred no more than five years before the charged offense."  "Consideration" of any corroboration, however, does not mean that corroboration is required.  (*People v. Mani* (2022) 74 Cal.App.5th 343, 372.)  Moreover, the language "any corroboration" implies a broad interpretation of evidence that could corroborate the victim's testimony.  (*Id.* at p. 373.)  Here, the victim told Deputy Bronson about at least one incident of domestic violence, and the victim's friend noted the victim frequently asked her to cover shifts at work and she "worried things weren't right."  (Cf. *Id.* at p. 373 [concluding contemporaneous police reports may serve as corroboration of the event].)  We do not agree the court abused its discretion simply because each individual incident the victim mentioned was not independently corroborated by other evidence.

Nor do we agree the jury might punish Welch for the uncharged acts rather than the current offense.  The court instructed the jury using CALCRIM No. 852A (evidence of uncharged domestic violence), which cautioned the jury that the prosecution was required to prove each charge beyond a reasonable doubt, the prior acts of domestic violence were not sufficient by themselves to constitute such proof, and the acts could not be considered for any other purpose.  This instruction guarded against the possibility the jury would use the evidence for an improper purpose.  (*People v. Wilson* (2008) 44 Cal.4th 758, 803 [jury presumed to follow jury instructions].)  And while the potential for punishment is a legitimate factor for the court to consider in the Evidence Code section 352 analysis (*People v. Tran* (2011) 51 Cal.4th 1040, 1047), the minimal potential for such an effect does not substantially outweigh the probative value we conclude exists here.  (*People v. Mani*, *supra*, 74 Cal.App.5th at p. 373.)

We conclude the trial court did not abuse its discretion when it admitted the prior acts evidence.

## II

### *Senate Bill No. 567*

Welch contends the trial court prejudicially erred when it imposed the upper term on the corporal injury count in violation of Senate Bill No. 567 and section 1170, subdivision (b).

Senate Bill No. 567 became effective January 1, 2022.  (Stats. 2021, ch. 731; Cal. Const., art. IV, § 8, subd. (c).)  The legislation generally prohibits a trial court from imposing an upper term sentence except where there are circumstances in aggravation of the crime that justify imposing the upper term, and the facts underlying those circumstances (1) have been stipulated to by the defendant, or (2) have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial.  (§ 1170, subd. (b)(1), (2), added by Stats. 2021, ch. 731, § 1.3.)  An exception to this rule authorizes the court to consider Welch's prior convictions in determining sentencing based on certified records of conviction without submitting the prior convictions to the jury.  (§ 1170, subd. (b)(3), added by Stats. 2021, ch. 731, § 1.3.)  We agree with the parties that Senate Bill No. 567 applies retroactively to Welch's case.  (*Lynch*, *supra*, 16 Cal.5th at p. 749.)

The trial court identified three reasons for imposing the upper term:  (1) Welch's two prior felony convictions in 2003 and 2009, (2) that Welch served prison terms for both of those prior felony convictions, and (3) the fact that Welch was on parole when he committed the current offense.  While the 2009 felony conviction was established using certified records, the 2003 conviction was not.[2]  During the sentencing hearing, Welch acknowledged having two prior felony convictions and being on parole at the time of the

---

[2]  The certified records of the 2009 conviction are redacted and do not include any reference to a prison term.

9

current offense.[3]  However, at least some of the factors the court relied on to impose the upper term—specifically, Welch's prior prison terms and, arguably, the 2003 conviction—were not found true by a jury or stipulated to by Welch.  Therefore, under section 1170, subdivision (b), the trial court erred in considering these circumstances when imposing the upper term.

We originally concluded the trial court's error was not prejudicial because it was not reasonably probable the jury would have found that Welch did not serve a prior prison term or did not receive the 2003 conviction.  We now conclude remand is required.

Under section 1170, subdivision (b), "a Sixth Amendment violation occurs when the trial court relies on unproven aggravating facts to impose an upper term sentence, even if some other aggravating facts relied on have been properly established." (*Lynch*, *supra*, 16 Cal.5th at p. 768.)  Such a violation "is prejudicial unless an appellate court can conclude beyond a reasonable doubt that a jury would have found true all of the aggravating facts relied upon by the trial court to justify an upper term sentence, or that those facts were otherwise proved true in compliance with the current statutory requirements.  If the reviewing court cannot so determine, applying the *Chapman*[4] standard of review, the defendant is entitled to a remand for resentencing." (*Lynch*, at p. 768.)  Accordingly, Welch is entitled to reversal and remand "unless . . . we can conclude that the omission of a jury trial was harmless beyond a reasonable doubt as to *every* aggravating fact the trial court used to justify an upper term sentence. . . .  In other words, if ' " '[n]o reasonable jury' " ' would have found in favor of the defendant on the

---

[3]  Welch agrees he admitted he was on parole, but argues the admission of the prior convictions is insufficient because it did not include the required plea colloquy.

[4]  *Chapman v. California* (1967) 386 U.S. 18.

10

missing fact, given the jury's actual verdict and the state of the evidence, the error may be found harmless beyond a reasonable doubt.' " (*Id*. at p. 775.)

Here, the trial court relied on Welch's prior prison terms to impose an upper term sentence. Welch did not stipulate to the existence of these terms, nor did a jury find them true beyond a reasonable doubt. The People argue Welch clearly served prior prison terms based on his acknowledgment at the sentencing hearing that he was on parole at the time of the offense. But such a circumstantial inference falls short of the " 'overwhelming evidence' " required under *Lynch* to find harmless error. (*Lynch*, *supra*, 16 Cal.5th at p. 775.) Moreover, the trial court also noted the specific terms of Welch's prior sentences at the sentencing hearing, as well as the crimes with which they were associated, neither of which would be available to a "reasonable jury" evaluating the aggravating facts on this record. Consequently, we cannot conclude beyond a reasonable doubt that a jury would have found true all facts relied upon by the trial court to impose the upper term, and we must remand the case for resentencing.

Consistent with *Lynch*, the "proceedings on remand are to be conducted in accordance with the current statutory requirements and the defendant given the opportunity for the jury trial, of which he was deprived." (*Lynch*, *supra*, 16 Cal.5th at p. 777.) "On remand, the parties remain free to introduce at trial all relevant evidence to support or contest the factual support for the aggravating circumstances set out in the California Rules of Court. The court may rely on any properly proven aggravating facts, including prior convictions or facts necessarily found by the jury to support a verdict on underlying counts and enhancements. The court retains its discretion to impose an upper term sentence if it concludes that one or more properly proved circumstances justify such a sentence. [Citation.] If it cannot so conclude, it may impose no more than a middle term . . . ." (*Id*. at pp. 777-778.)

11

Because we have concluded Welch is entitled to a full resentencing, we do not reach his challenge as to his fines and fees. Welch may raise any such objections, if desired, at resentencing.

DISPOSITION

The sentence is reversed. The matter is remanded for full resentencing and further litigation of the aggravating circumstances and for the trial court to exercise its discretion under the current section 1170, subdivision (b). The judgment is otherwise affirmed.


_____/s/_____
BOULWARE EURIE, J.



We concur:


_____/s/_____
EARL, P. J.


_____/s/_____
RENNER, J.

12